COMMONWEALTH *vs.* RAFAEL CRUZ.

No. 03-P-523.

Middlesex. September 15, 2004. - December 2, 2004.

Present: GREENBERG, LENK, & KAFKER, JJ.

*Sex Offender. Practice, Criminal,* Plea. *Estoppel.*

This court concluded that the Commonwealth's petition pursuant to G. L. c. 123A to have a criminal defendant committed as a sexually dangerous person upon the expiration of his prison sentence did not violate the defendant's plea agreement, where the record did not show that the prosecutor promised, as part of the plea agreement, not to pursue civil commitment proceedings, and where there was no express or implied prophylactic agreement or principle of equitable estoppel that prevented the Commonwealth from seeking such commitment [611-614]; further, this court concluded that the judge hearing the defendant's motion to enforce his plea agreement and sentence did not err in deciding the motion without an evidentiary hearing [614].

INDICTMENTS found and returned in the Superior Court Department on May 8, 1990.

A motion to enforce a plea agreement and sentence, filed on March 3, 2003, was considered by *Robert H. Bohn, Jr.,* J., and a motion for reconsideration was also considered by him.

*Anna M. Lembo* for the defendant.

*Sheryl ·F. Grant,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. In this case, we decide whether the Commonwealth's petition to have the defendant committed as a sexually dangerous person pursuant to G. L. c. 123A, upon the expiration of his State prison sentence, violated his guilty plea agreement.

In February, 1992, the defendant pleaded guilty to two counts of rape and abuse of a child and two counts of indecent assault and battery on a child under the age of fourteen. On November

19, 2001, as the defendant neared completion of his sentences on those offenses, the Commonwealth filed a petition in the Superior Court pursuant to G. L. c. 123A, § 12(*b*), alleging that the defendant was a sexually dangerous person.[1] A Superior Court judge, pursuant to § 13(*a*) of the statute, found probable cause to believe that he was sexually dangerous and should be temporarily committed.

In March, 2003, the defendant filed a posttrial motion to enforce the plea agreement and the sentence in the underlying criminal cases, alleging that the Commonwealth had "breached the plea agreement" by seeking a c. 123A commitment.[2] He claimed that his plea agreement included a promise by the prosecutor to release him from custody at the expiration of his criminal sentence. The judge denied the defendant's motion, and his motion for reconsideration, without a hearing. On appeal, the defendant claims that the Commonwealth's petition for his civil commitment constituted a breach of the plea agreement, and that principles of equitable estoppel bar the Commonwealth from seeking his commitment. He also contends that the judge erred in denying his motion to enforce the plea agreement without a hearing. Finally, he requests the dismissal of the Commonwealth's civil commitment petition.

*Discussion.* The plea bargain has often been compared to an enforceable contract. *Commonwealth* v. *Tirrell*, 382 Mass. 502, 512 (1981). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must

---

[1]General Laws c. 123A, as amended through St. 1999, c. 74, §§ 3-8, provides for the involuntary civil commitment of persons who are convicted of sexual offenses and found to be sexually dangerous based on prior conviction for a sexual offense and a mental abnormality or personality disorder that makes the offender likely to engage in sexual offenses if not confined to the Massachusetts Treatment Center. *Commonwealth* v. *Boyer*, 58 Mass. App. Ct. 662, 664 (2003). To commit a person under the statute, or keep a person committed, the Commonwealth must prove beyond a reasonable doubt that the offender is currently a sexually dangerous person. See *Mendonza* v. *Commonwealth*, 423 Mass. 771, 782-783 (1996); *Wyatt, petitioner*, 428 Mass. 347, 352 (1998); G. L. c. 123A, § 14(*d*). For a description of current sexually dangerous person commitment procedure, see *Commonwealth* v. *Boyer*, 61 Mass. App. Ct. 582, 584 n.3 (2004).

[2]The defendant's motion is shown on the trial court docket as a "substitute motion." It is substantially similar to one he filed a month earlier.

be fulfilled." *Santobello* v. *New York*, 404 U.S. 257, 262 (1971). See *Correale* v. *United States*, 479 F.2d 944, 947 (1st Cir. 1973) ("the most meticulous standards of both promise and performance must be met by prosecutors engaging in plea bargaining"). At the heart of the theory of an enforceable plea bargain is a pledge of public faith that must be enforced. See *Doe* v. *District Attorney for the Plymouth Dist.*, 29 Mass. App. Ct. 671, 673 (1991); Reporter's Notes to Mass.R.Crim.P. 12(b)(1), Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1303-1304 (2003). And even if no contract is found, the defendant has a right to enforce prosecutorial promises where fundamental fairness so requires. See *Commonwealth* v. *Smith*, 384 Mass. 519, 522 (1981); *Commonwealth* v. *Doe*, 412 Mass. 815, 818-819 (1992).

Viewed in this context, the fundamental flaw in the defendant's request for the enforcement of his plea agreement by dismissal of the petition for his civil commitment is that the record does not show that the prosecutor promised, as part of the plea agreement, not to pursue c. 123A proceedings. Other than the criminal docket, which refers only to the defendant's "sentence" and is silent as to what would happen when the sentence was complete, the parties have not provided us any record of the plea hearing.[3] There was no statutory authority for commitments to the Massachusetts Treatment Center at the time of the defendant's plea.[4] Without this prospect, there was no need for the matter to be discussed, let alone be incorporated into the plea agreement.

Despite this lack of record, the defendant maintains that the plea agreement means the district attorney cannot pursue civil commitment now that the defendant has served his criminal sentence. His position requires us to assume that commitment under G. L. c. 123A constitutes punishment and was therefore implicitly precluded by his plea agreement. This argument finds

[3]The motion judge, who had presided over the plea hearing, found that the defendant was sentenced in accordance with a negotiated plea agreement.

[4]In 1990, the Legislature repealed an earlier version of G. L. c. 123A, ending all new commitments to the Massachusetts Treatment Center for sexually dangerous persons. See St. 1990, c. 150, §§ 104, 304. A provision allowing for civil commitment of sexually dangerous persons was enacted again in 1999. See G. L. c. 123A, § 12, inserted by St. 1999, c. 74, § 8.

no support in our decisional law and was foreclosed by the Supreme Judicial Court in *Commonwealth* v. *Bruno*, 432 Mass. 489 (2000). In *Bruno*, the court held that G. L. c. 123A is a remedial statute and that an order of commitment does not constitute further punishment. *Id.* at 499-502. See *Hill, petitioner*, 422 Mass. 147, 154, cert. denied, 519 U.S. 867 (1996) (stating that civil commitment does not serve as an additional punishment or deterrent measure). See also *Kansas* v. *Hendricks*, 521 U.S. 346, 361-364 (1997) (holding that an analogous statute allowing commitment of sexually dangerous persons was civil in nature and did not constitute punishment). Moreover, our cases hold that civil commitment is a collateral consequence of a criminal conviction which need not be addressed at the plea hearing in order for the plea to be valid. *Commonwealth* v. *Morrow*, 363 Mass. 601, 605-606 (1973).[5]

As the record before us contains nothing to establish an express or implied prophylactic agreement along the lines of which the defendant suggests, he contends that the Commonwealth is prohibited from filing a c. 123A petition by reason of equitable estoppel. Putting aside the settled proposition that Massachusetts courts are reluctant to apply equitable estoppel against the Commonwealth, see, e.g., *Langlitz* v. *Board of Registration of Chiropractors*, 396 Mass. 374, 378 (1985), *Dagastino* v. *Commissioner of Correction*, 52 Mass. App. Ct. 456, 459 (2001), the argument is unavailing.

In order to estop an opposing party from maintaining a position, a party seeking estoppel must show (1) a representation intended to induce reliance on the part of the person to whom it

---

[5]The defendant's brief makes much of a decision of the Court of Appeal of Florida that upheld a claim very similar to the claim made here. See *Harris* v. *State*, 879 So. 2d 1223 (Fla. App. 1st Dist. 2002). The Florida Supreme Court has since overruled that decision, *State* v. *Harris*, 881 So. 2d 1079 (Fla.), cert. denied, 125 S. Ct. 812 (2004), in an opinion that relies heavily on another Florida Supreme Court case, *Murray* v. *Regier*, 872 So. 2d 217 (Fla. 2002). As here, Murray's plea agreement was negotiated at the time he pleaded guilty to sexual offenses, and there was no mention of any obligation on the prosecutor's part not to institute civil commitment proceedings after Murray served his prison sentence. Stressing that civil commitment is distinct from the criminal proceeding, the Florida Supreme Court held that "any bargain that a defendant may strike in a plea agreement in a criminal case would have no bearing on a subsequent involuntary civil commitment for control, care, and treatment." *Id.* at 224.

is made that is contrary to the position the representer now maintains; (2) an act done in reasonable reliance on that representation; and (3) detriment as a consequence of that reliance. See *Bongaards* v. *Millen*, 440 Mass. 10, 15 (2003). The defendant argues that the Commonwealth has changed its position by seeking his civil commitment while having previously agreed to seek a particular criminal sentence. As we noted earlier, this reasoning assumes that civil commitment under G. L. c. 123A is punishment — a notion consistently rejected by the Supreme Judicial Court. See *Hill, petitioner*, 422 Mass. at 154; *Commonwealth* v. *Bruno*, 432 Mass. at 499-501. Thus, the Commonwealth, by initiating civil commitment proceedings against the defendant, did not seek to add to the criminal sentence it recommended and upon which he based his decision to plead guilty. As neither party contemplated the possibility of involuntary civil commitment at the time of the plea agreement in 1992, neither could have reasonably relied on the plea agreement's sentencing language to foreclose the possibility. See St. 1990, c. 150, §§ 104, 304.

Contrary to the defendant's argument, there was no reason for the judge to conduct an evidentiary hearing. The judge, who had presided over the defendant's plea hearing, correctly recognized that the "existence, scope and enforceability of plea bargains are dealt with as part of the primary criminal case, through motions to dismiss indictments or through postconviction motions." *Doe* v. *District Attorney for the Plymouth Dist.*, 29 Mass. App. Ct. at 676-677. His thoughtful memorandum indicates that he considered the defendant's arguments. Judges have discretion to decide postconviction motions without a hearing when "no substantial issue is raised by the motion or affidavits." Mass.R.Crim.P. (30)(c)(3), as appearing in 435 Mass. 1501 (2001). The burden is on the defendant, as appellant, to demonstrate error. As we noted, the defendant filed nothing — and the record contains nothing — setting forth facts that would require an evidentiary hearing. Compare *Doe* v. *District Attorney for the Plymouth Dist.*, 29 Mass. App. Ct. at 674, 677-678 (instructing the lower court to hold an evidentiary hearing because the parties raised substantial issues whether a plea agreement existed and its scope).

The order denying the defendant's motion to enforce a plea agreement and sentence is affirmed.

*So ordered.*