[894 NYS2d 614]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID M. HARNETT, Appellant.

Third Department, February 25, 2010

APPEARANCES OF COUNSEL

*Brian M. Callahan,* Duanesburg, for appellant.

*Robert M. Carney, District Attorney,* Schenectady (*Gerald A. Dwyer* of counsel), for respondent.

### OPINION OF THE COURT

MALONE JR., J.

Pursuant to a plea agreement, defendant pleaded guilty to sexual abuse in the first degree, waived his right to appeal and was thereafter sentenced to an agreed-upon prison term of seven years, with 10 years of postrelease supervision. In addition, County Court entered an order of protection in the victim's favor for a period of 15 years. Defendant appeals.

Defendant contends that his guilty plea was not knowingly, intelligently or voluntarily entered because County Court did not advise him prior to the entry of that plea that a sex offense conviction subjects him to the provisions of the Sex Offender Management and Treatment Act (*see* Mental Hygiene Law art 10 [hereinafter SOMTA]), which could result in confinement or intensive supervision beyond the expiration of his prison sentence. It is well settled that trial courts are required to advise defendants who plead guilty regarding the direct consequences of such plea, but they have no obligation to iterate every collateral consequence of the conviction (*see People v Catu,* 4 NY3d 242, 244 [2005]; *People v Ford,* 86 NY2d 397, 405 [1995]). "Collateral consequences are peculiar to the individual and generally result from the actions taken by agencies the court does not control[, whereas a] direct consequence is one which has a definite, immediate and largely automatic effect on [a] defendant's punishment" (*People v Catu,* 4 NY3d at 244 [internal quotation marks and citation omitted]).

It is important to initially note that SOMTA proceedings are expansive civil proceedings, which are entirely separate from and independent of the original criminal action.[1] Although any person qualifying as a "[d]etained sex offender" (Mental Hygiene Law § 10.03 [g]), such as defendant, is necessarily subjected to the initial notice provision of SOMTA (*see* Mental Hygiene Law § 10.05), such notice does not automatically result in an ultimate finding that the person is a "[d]angerous sex offender requiring confinement" (Mental Hygiene Law § 10.03 [e]). Specifically, SOMTA provides that, upon notice by an authorized agency that a person who may be a detained sex offender is about to be released from incarceration, a multidisciplinary staff at the Office of Mental Health will conduct a preliminarily review to determine whether that person should be further evaluated by a case review team (*see* Mental Hygiene Law § 10.05 [d]). If the person is referred to a case review team, and if that team finds, in its opinion, that the person requires civil management, the Attorney General is notified and provided with a report of a psychiatrist opining whether that person has a "mental abnormality" (Mental Hygiene Law § 10.05 [e]; *see* Mental Hygiene Law § 10.03 [i]). The Attorney General may then elect to file a sex offender civil management petition (*see* Mental Hygiene Law § 10.06 [a]), and the court before which that petition is pending must then conduct a hearing "to determine whether there is probable cause to believe that the respondent is a sex offender requiring civil management" (Mental Hygiene Law § 10.06 [g]). If the court finds that such probable cause exists, "the court shall conduct a jury trial to determine whether the respondent is a detained sex offender who suffers from a mental abnormality," which finding must be established by clear and convincing evidence (Mental Hygiene Law § 10.07 [a]; *see* Mental Hygiene Law § 10.07 [d]). If such finding is made after the trial, the parties are afforded the opportunity to present additional evidence and the court must determine, again by clear and convincing evidence, "whether

1. In reviewing the constitutionality of other states' similar civil confinement statutes, the United States Supreme Court has examined the legislative history, the stated purpose and intent of the legislation, as well as the statutory text itself, in deciding whether the legislation is civil or punitive in nature. In each case, that Court has found that the challenged statutes are civil and do not violate the Ex Post Facto or Double Jeopardy Clauses of the US Constitution (*see e.g. Seling v Young*, 531 US 250 [2001]; *Kansas v Hendricks*, 521 US 346 [1997]). Upon a review of those same factors with respect to the statute at issue here, we find no reason to conclude that it is anything other than civil in nature.

the respondent is a dangerous sex offender requiring confinement or a sex offender requiring strict and intensive supervision" (Mental Hygiene Law § 10.07 [f]).

■ Considering the foregoing lengthy SOMTA process—with its numerous civil procedural steps that must be followed before a final determination is made—this Court finds that it cannot be reasonably said that the potential for the future civil confinement or intensive supervision of defendant is an immediate, definite or automatic result of his guilty plea (*see People v Catu*, 4 NY3d at 244). Notably, the relevant determinations will not be based solely on the admissions that defendant made at the time of his guilty plea but, rather, will be based upon the particular circumstances of defendant's criminal history, his mental health at the time of his anticipated release and other factors to be ascertained during the SOMTA proceedings. We therefore find that the potential for either civil confinement or supervision pursuant to SOMTA is a collateral consequence of a guilty plea and, therefore, the current state of the law does not require that defendants be informed of it prior to entering a plea of guilty.[2]

■ Finally, we are not convinced that County Court's entry of a more restrictive order of protection than was contemplated during plea negotiations renders defendant's guilty plea invalid. Orders of protection are not punitive in nature and are not necessarily dependent on, or the result of, a plea agreement (*see People v Nieves*, 2 NY3d 310, 316 [2004]; *see also People v Hull*, 52 AD3d 962, 963 [2008]).

STEIN, J. (dissenting). While we agree with the majority's de-

---

**2.** While this appears to be a case of first impression in this state, persuasive authority for this conclusion exists elsewhere (*see e.g. Steele v Murphy*, 365 F3d 14 [1st Cir 2004]; *George v Black*, 732 F2d 108 [8th Cir 1984]; *Cuthrell v Director, Patuxent Inst.*, 475 F2d 1364 [4th Cir 1973]; *Klaus v Luebbers*, 2009 WL 367697, 2009 US Dist LEXIS 10031 [ED Mo 2009, Fleissig, J.]; *Page v State*, 364 SC 632, 615 SE2d 740 [Sup Ct 2005]; *State v Harris*, 881 So 2d 1079 [Fla Sup Ct 2004], *cert denied* 543 US 1036 [2004]; *Freeman v State*, 2008 Minn App Unpub LEXIS 1316 [Ct App 2008]; *In re Detention of Lindsay*, 333 Ill App 3d 474, 776 NE2d 304 [5th Dist 2002]; *Martin v Reinstein*, 195 Ariz 293, 987 P2d 779 [Ct App 1999]; *People v Moore*, 69 Cal App 4th 626, 81 Cal Rptr 2d 658 [Ct App 1998]; *Bussell v State*, 25 Kan App 2d 424, 963 P2d 1250 [Ct App 1998]; *see also State v Strenge*, 752 NW2d 35 [2008] [table; text at 2008 WL 942284, 2008 Iowa App LEXIS 220 (Ct App 2008)]; *Commonwealth v Cruz*, 62 Mass App Ct 610, 818 NE2d 616 [2004]; *but see State v Bellamy*, 178 NJ 127, 138-139, 835 A2d 1231, 1237-1238 [Sup Ct 2003] [although a collateral consequence, the nature of potential civil commitment is so "severe" that "fundamental fairness" requires that defendants be informed of it before entering a guilty plea]).

termination that the terms of the order of protection entered against defendant do not render his guilty plea invalid, we respectfully dissent from so much of the majority decision as concluded that it was not necessary to inform defendant of the potential for civil confinement pursuant to the Sex Offender Management and Treatment Act (*see* Mental Hygiene Law art 10 [hereinafter SOMTA]) prior to entering a plea of guilty.

Under firmly established principles, " '[a] trial court has the constitutional duty to ensure that a defendant, before pleading guilty, has a full understanding of what the plea connotes and its consequences' " (*People v Catu*, 4 NY3d 242, 244-245 [2005], quoting *People v Ford*, 86 NY2d 397, 402-403 [1995]). Thus, due process requires that the plea and the waiver of rights it necessarily encompasses represent a knowing, voluntary and intelligent choice among the alternative courses of action available to the defendant (*see* NY Const art I; *People v Hill*, 9 NY3d 189, 191 [2007], *cert denied* 553 US 1048 [2008]; *People v Catu*, 4 NY3d at 245; *People v Ford*, 86 NY2d at 403). The majority correctly notes that a distinction has been drawn between "direct" and "collateral" consequences of a plea—requiring that a defendant be advised of the former, but not of the latter (*see People v Catu*, 4 NY3d at 244; *People v Ford*, 86 NY2d at 403)—and it has been universally held that civil confinement laws comparable to SOMTA are civil proceedings that are considered "collateral" to the criminal action in which a plea is taken.* Nevertheless, we would find, as a matter of fundamental fairness, that the possibility of civil commitment under SOMTA must be disclosed to a defendant prior to his or her plea of guilty, regardless of whether such commitment is considered to be a direct or penal consequence of the plea (*see State v Bellamy*, 178 NJ 127, 138-139, 835 A2d 1231, 1237-1238 [Sup Ct 2003]).

Under SOMTA, a defendant who has committed a predicate offense may be faced with confinement for life (*see* Mental Hygiene Law §§ 10.07, 10.09, 10.10). In that sense, it constitutes a potentially greater deprivation of liberty than the criminal sentence imposed upon most defendants and is far more akin to postrelease supervision—a direct consequence of a plea— where a person is not at liberty to move about in society (*see People v Catu*, 4 NY3d 242 [2005]), than to a dishonorable discharge from the armed forces or the loss of voting rights, the right to travel abroad, civil service employment, a driver's

---

* Citations for these propositions are set forth in footnotes 1 and 2 of the majority decision and will not be repeated here.

license, or the right to possess firearms—all of which have been deemed to be collateral consequences to a plea of guilty (*see People v Ford*, 86 NY2d at 402-403). Furthermore, unlike many of the other consequences deemed to be collateral, the courts play a substantial role in presiding over and adjudicating cases under SOMTA's statutory framework (*see* Mental Hygiene Law §§ 10.06, 10.07, 10.09). In this regard, SOMTA bears some similarity to the Sex Offender Registration Act (*see* Correction Law art 6-C).

Furthermore, we share the view of our sister state that whether a court should be required to advise a defendant of certain consequences of a plea should not depend on the legal characterization of those consequences, as " '[i]t matters little if the consequences are called indirect or collateral when in fact their impact is devastating' " (*State v Bellamy*, 178 NJ at 138, 835 A2d at 1238, quoting *State v Heitzman*, 107 NJ 603, 606, 527 A2d 439, 441 [1987, Wilentz, Ch. J., dissenting]). "A more onerous impairment of a person's liberty interest [than indefinite confinement] is difficult to imagine" (*In re Civil Commitment of D.L.*, 351 NJ Super 77, 90, 797 A2d 166, 173 [2002]). In contrast, a requirement that defendants be informed of SOMTA at the time they enter a guilty plea is not an onerous burden, as such requirement would only be triggered when the crimes underlying the plea are sex offenses (*see* Penal Law art 130) and the applicability of SOMTA will not be dependent upon the individual circumstances of each defendant, as every defendant who pleads guilty to such crimes will be subject to its provisions. In addition, as with the Sex Offender Registration Act, trial judges can be expected to be generally aware of SOMTA. Thus, in our view, "[t]he failure . . . to inform [a] defendant that a possible consequence of a plea to a predicate offense under [SOMTA] is future confinement for an indefinite period deprives that defendant of information needed to make a knowing and voluntary plea" and violates principles of fundamental fairness (*State v Bellamy*, 178 NJ at 139, 835 A2d at 1238-1239). Here, inasmuch as defendant was not apprised of the potential effect of SOMTA, we would remit the matter to County Court to permit him to withdraw his plea.

CARDONA, P.J., and ROSE, J., concur with MALONE JR., J.; STEIN and GARRY, JJ., dissent in a separate opinion by STEIN, J.

Ordered that the judgment is affirmed.