The defendant appeals from the order denying his motion to withdraw his guilty pleas in the Superior Court. He claims that he would not have pleaded guilty had he known that Annie Dookhan[2] performed a chemical test in the case resulting in the predicate drug conviction underlying his indictment as an armed career criminal (ACC). We affirm.
Background. 1. The predicate drug conviction in the Boston Municipal Court. On October 9, 2009, the defendant pleaded guilty in the Boston Municipal Court (BMC) to possession of cocaine with intent to distribute. He was sentenced to two years in the house of correction, suspended for two years. Over two months later, the Hinton lab conducted chemical testing of the evidence in the defendant's case. Dookhan was the confirmatory analyst. Over three years later, on January 17, 2014, the defendant moved to vacate his guilty plea claiming that (1) he was a juvenile at the time of his guilty plea and therefore the BMC was without jurisdiction, (2) his counsel was ineffective, and (3) he was not provided with a certificate of analysis of the chemical testing of the evidence. On February 28, 2014, a second judge allowed the motion by margin endorsement without explanation. The Commonwealth filed a notice of appeal, but later, on May 2, 2014, filed an assent to the defendant's motion to vacate his guilty plea referencing Dookhan's misconduct. On the same date, the Commonwealth entered a nolle prosequi.
2. The Superior Court convictions. While the defendant's motion to vacate his guilty plea was pending in the BMC, on February 10, 2014, the defendant pleaded guilty in two separate Superior Court cases to multiple indictments charging assault and battery by means of a dangerous weapon, simple assault and battery, and possession of ammunition without a firearms identification card. In exchange, the Commonwealth agreed not to pursue an ACC penalty enhancement based on the predicate drug conviction in the BMC. The defendant was sentenced to two and one-half to three years in State prison.
On February 12, 2015, the defendant filed a motion to withdraw his guilty pleas in the Superior Court, arguing that he pleaded guilty only to avoid the potential ACC minimum mandatory sentence of three years. According to the defendant, had he known of Dookhan's involvement in the BMC drug case, he would not have pleaded guilty in the Superior Court. The motion judge, who had also taken the defendant's guilty pleas, denied the motion on May 3, 2016, reasoning that the defendant had failed to establish both (1) that the Commonwealth engaged in egregious misconduct that antedated the defendant's BMC guilty plea, and (2) that the misconduct had a material influence on the defendant's decision to plead guilty.
Discussion. We review the defendant's motion to vacate his guilty pleas as a motion for new trial. Commonwealth v. Furr, 454 Mass. 101, 106 (2009). Consequently, we evaluate the judge's decision "only to determine whether there has been a significant error of law or other abuse of discretion." Commonwealth v. Acevedo, 446 Mass. 435, 441 (2006), quoting from Commonwealth v. Grace, 397 Mass. 303, 307 (1986).
To prevail on his motion to vacate his guilty pleas, the defendant was required to establish that (1) there was egregious government misconduct in his case, and (2) the egregious misconduct materially influenced his decision to plead guilty. Ferrara v. United States, 456 F.3d 278, 290 (1st Cir. 2006). The Supreme Judicial Court has ruled that if Dookhan signed the certificate as the primary or secondary chemist, a defendant seeking to withdraw his plea is entitled to a conclusive presumption of egregious government misconduct. Commonwealth v. Scott, 467 Mass. 336, 354 (2014). "Underlying that presumption, however, is the assumption that the misconduct evidenced by the certificate antedated the guilty plea." Commonwealth v. Ruffin, 475 Mass. 1003, 1004 (2016). If, as in the defendant's BMC case, the "certificate [ ] indicate[s] that Dookhan analyzed the drugs in the defendant's case after the plea proceedings were conducted, even presuming misconduct occurred at that time, her involvement cannot be said presumptively and retroactively to have induced the defendant's plea months earlier" (emphasis supplied). Ibid. Because the defendant's guilty plea in the BMC preceded any misconduct by Dookhan, he could not establish egregious government misconduct in the predicate conviction within the meaning of Ferrara and Scott.
The defendant argues that the prosecutor's failure to disclose Dookhan's role in the BMC case during plea negotiations in the Superior Court was itself egregious government misconduct that materially influenced his decision to plead guilty. Generally, we review a claim that the prosecution failed to disclose exculpatory evidence to determine if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Commonwealth v. Tucceri, 412 Mass. 401, 405 (1992) (quotation omitted). Whether we review the nondisclosure under this standard or the two-pronged Ferrara test as the defendant suggests, the result is the same. We are not persuaded that the outcome of the proceeding would have been different if the defendant had been aware that Dookhan was the confirmatory chemist.
"Under the second prong of the Ferrara analysis, the defendant must demonstrate a reasonable probability that he would not have pleaded guilty had he known of Dookhan's misconduct." Scott, supra at 354-355. In reviewing the defendant's showing on this prong, we consider the totality of the circumstances, including the following factors:
"(1) whether evidence of the government misconduct could have detracted from the factual basis used to support the plea, (2) whether the evidence could have been used to impeach a witness whose credibility may have been outcome-determinative, ... and (5) whether the value of the evidence was outweighed by the benefits of entering into the plea agreement."
Id. at 355-356.
Here, Dookhan's misconduct in the BMC case, even if it had been established, could not have detracted from the factual basis for the guilty pleas to the Superior Court indictments. Even if the Superior Court cases had proceeded to trial, Dookhan would not have been a witness on the charges of unlawful possession of ammunition and assault and battery by means of a dangerous weapon. The only issue to be decided on the ACC charge was whether the defendant was the same person previously convicted of the drug offense in the BMC. See G. L. c. 269, § 10G(a ). Her testimony was not necessary to establish those elements. Therefore, her credibility was not at issue in the Superior Court prosecution.
Whatever value Dookhan's involvement in the BMC case may have had to the defendant was outweighed by the benefits he received from the plea agreement in the Superior Court. The evidence supporting the allegations was strong. The factual basis for the unlawful possession of ammunition charge for which the Commonwealth sought ACC penalty enhancement included the seizure of a bag containing eleven rounds of live ammunition from the floor on the passenger side of a vehicle where the defendant was seated. The charge of assault and battery by means of a dangerous weapon was supported by evidence that the defendant attacked a court officer in the court house, striking him on the head with handcuffs. The assault was committed in the presence of three other court officers.
In the second Superior Court case, the defendant was charged with a violent attack on another inmate detained at the Nashua Street jail. The incident was captured on videotape and the defendant made statements admitting the attack. Thus, the likelihood of conviction after trial was high, notwithstanding the defendant's claim that he "would have been acquitted."
By pleading guilty, the defendant avoided additional sentencing exposure on the charges the Commonwealth agreed to dismiss, i.e., the counts of possession of cocaine and assault and battery, and, most significantly, the ACC portion of the possession of ammunition charge, which carried a minimum mandatory three-year and potential fifteen-year prison sentence. Considering the totality of these circumstances, the defendant has not demonstrated a reasonable probability that he would not have pleaded guilty if he had known that Dookhan tested the drugs after his guilty plea in the BMC.
Finally, the defendant argues that the Commonwealth, having assented to the motion to vacate his BMC plea, is equitably estopped from opposing the motion to withdraw his guilty pleas in the Superior Court. The argument is unavailing. To establish judicial estoppel, the position presently asserted must be "directly inconsistent" with a prior position, and "the party must have succeeded in convincing the court to accept its prior position." Commonwealth v. DiBenedetto, 458 Mass. 657, 671 (2011) (quotation omitted). Here, the Commonwealth's assent, filed months after the motion to vacate was allowed in the BMC, could not have convinced the judge to allow the motion. Moreover, the Commonwealth's assent to the defendant's motion to vacate his plea in the BMC postdated his guilty pleas in the Superior Court. Therefore, the Commonwealth's assent to the dismissal of the BMC case could not have induced the defendant to rely on that dismissal to his detriment. See Commonwealth v. Cruz, 62 Mass. App. Ct. 610, 614 (2004) (prosecutorial estoppel requires detrimental reliance on earlier inconsistent position).
For all of these reasons, we discern no abuse of discretion in the denial of the defendant's motion to withdraw his guilty pleas.
Order denying motion to withdraw guilty pleas affirmed.

Dookhan pleaded guilty to multiple counts of evidence tampering and obstruction of justice, all related to her handling and testing of drug samples at the William A. Hinton State Laboratory (Hinton lab).