OPINION OF THE COURT
Anil C. Singh, J.
This is a CPLR article 78 proceeding. Petitioner challenges respondent New York State Division of Parole’s application to him of Executive Law § 259-c (14), which prohibits individuals who are on parole for certain categories of sex crimes from residing within 1,000 feet of schools where children under the age of 18 are enrolled. Petitioner contends that, as applied to his circumstances, the statute is an unconstitutional ex post facto law because he committed the criminal offense before the effective date of the statute and the statute increases the penalty for the crime by banishing him from Manhattan. Respondent opposes the petition.
For more than 40 years, petitioner Ariel Berlin has resided at 250 West 85th Street in Manhattan. He is 77 years old.
In July 2005, Berlin placed an ad on a telephone dating service seeking homosexual encounters. Berlin met a man who invited Berlin to come to his apartment in the East Village to “play” with him and his five-year-old daughter.
Berlin went to the apartment on July 14, 2005. The man came to the door dressed in women’s clothing and holding his daughter’s hand. Berlin got undressed and touched the child’s vagina with his hand as the father watched.
Within a few days, Berlin told his therapist what he had done. On July 21, 2005, the therapist submitted a law enforcement referral form to the authorities describing the crime.
The police arrested Berlin on July 29, 2005.
Following a jury trial, petitioner was convicted on September 28, 2006, of sexual abuse in the first degree. He was sentenced to a five-year term of imprisonment, followed by three years’ postrelease supervision. The verdict and sentence were affirmed on appeal (People v Berlin, 39 AD3d 351 [1st Dept 2007], lv denied 9 NY3d 840 [2007]).
While he was in prison, Berlin continued paying rent for his apartment, and he planned to return to his apartment as soon as he was released from prison.
*921 Prior to his release, Berlin was adjudged a level one, low-risk sex offender. Two days before his release, however, Berlin was told that he would not be allowed to live in his apartment, or an alternate address he submitted, because each was located within 1,000 feet of a school. A facility parole officer told Berlin that this was because of “SARAs law.”
On October 1, 2010, petitioner was released to parole supervision. At the time of his release, Berlin promised to abide by 11 special conditions of parole release, including promising to abide by the mandatory condition imposed by the Sexual Assault Reform Act, chapter 1 of the Laws of 2000 (SARA).
Petitioner also signed a mandatory condition of release to parole supervision form. The form states in part:
“I, Ariel BERLIN, acknowledge that under the provisions of my Conditions of Release, the following Mandatory Condition has been imposed upon me and that this Mandatory Condition will remain in effect until the termination of my legal period of supervision (10-01-13) unless otherwise amended in writing by the Division of Parole.
“I will not knowingly enter upon any school grounds [School grounds are defined as an area in, on or within any and all buildings, structures, athletic playing fields, playgrounds or land, contained within the property line of a public or private elementary, parochial, intermediate, junior high, vocational or high school or any area accessible to the public (sidewalks, streets, parking lots, parks, playgrounds, stores and restaurants) located within 1000 feet of the property line of any such school or any parked car or other vehicle located within 1000 feet of the property line of such school] or any other facilities or institutions primarily used for the care and treatment of persons under the age of eighteen, unless “I am a registered student, participant, employee, contracted employee or have a family member enrolled in one of the described institutions or facilities and
“Have written permission from my Parole officer.” (Petitioner’s exhibit F.)
In addition, petitioner read and signed a special conditions of release to parole supervision form in October 2010. The form acknowledged Berlin’s understanding that he was not permitted to reside within a school zone as defined above. He acknowledged *922 further that if his current residence conflicted with this mandatory condition, he must move to a new residence that complied with this mandatory condition within one day.
Petitioner was directed to report to the Bellevue Men’s Shelter upon his release from prison. When he arrived at the shelter, the shelter refused to accept him. As this was a Friday afternoon, and he had no other place to go, he went home, accompanied by his friend and former neighbor, Dr. Steven Rapaport, who promptly notified his parole officer of the situation.
The following Monday, Berlin reported as directed to his parole officer. He said that he would agree to remain in his apartment at all hours and arrange for friends to deliver groceries and mail to him, so that he would never need to leave the apartment. His parole officer said that would not be acceptable and again ordered Berlin to reside at the shelter.
Once again, the Bellevue Men’s Shelter refused to admit him, saying that he was not homeless.
On October 6, 2010, Berlin visited his parole officer again. Berlin was required to sign a “Special Conditions of Release to Parole,” which stated that he was not permitted to reside at his apartment or the alternate address, 206 West 106th Street, because each location was within 1,000 feet of school property (petitioner’s exhibits G, H).
On October 7, 2010, the parole officer required Berlin to sign a more detailed “Special Condition of Release,” which stated that Berlin was not to reside in his apartment “under any circumstances,” for the same reason (petitioner’s exhibit I).
While seeking an alternative address that complied with the law, Berlin was allowed to stay temporarily with his friend Ed Belsky, and his roommate, at 2793 Eighth Avenue in Manhattan. However, Mr. Belsky did not allow Berlin to stay there more than a few days, nor was that address accepted by his parole officer as a longer-term residence.
The reentry unit of the Division of Parole tentatively located an address for him in the East New York neighborhood of Brooklyn, and Berlin was willing to rent an apartment there as an alternative to violating his parole, but the Division disapproved the address before he could move in. He was told that the building was more than 1,000 feet from a school but was disapproved because a child lived in the building.
Berlin was then allowed to live for a short while with his friend Roberta Hodes at 420 East 23rd Street in Manhattan *923 while he looked for other accommodations that complied with the law. However, Ms. Hodes was unable to accommodate him for more than a few days, nor was this address approved by his parole officer as a longer-term residence.
Berlin also proposed a temporary address at a YMCA, near the parole office to which he was to report, but this was rejected because of its proximity to schools or children.
On October 20, 2010, petitioner was admitted to Mount Sinai Hospital due to an illness. He was discharged on October 25, 2010.
Petitioner was admitted on October 26, 2010, to Bellevue Men’s Shelter, operated by the New York City Department of Homeless Services. Two days later, he was admitted to Bellevue Hospital because he was sick again. He remained at the hospital until November 9, 2010, when he was transferred to University Nursing Home in the Bronx.
Petitioner continues to reside at the nursing home. His landlord has instituted eviction proceedings based on respondent’s direction that petitioner is not permitted to return to his apartment until his parole ends. Petitioner has retained counsel to attempt to prevent the eviction until the court has ruled on the merits of the instant petition.
Petitioner commenced the instant article 78 proceeding by filing a petition on October 15, 2010. The petition asserts that he should be allowed to return to his Manhattan apartment for the following reasons.
First, all or nearly all residential addresses in New York County lie within 1,000 feet of the real property line of a school. Therefore, if the statute is applied to prevent Berlin from living in his apartment, or anywhere else within 1,000 feet of a school, he is effectively banished from New York County, where he has spent nearly his entire life.
Second, application of the statute to petitioner violates his federal and state constitutional rights to substantive due process. Third, application of the statute to Berlin violates his fundamental right to travel. Fourth, as applied to petitioner, the statute operates as an unconstitutional ex post facto law. Fifth, petitioner contends that it would be possible for him to reside in his apartment under certain conditions without violating the statute.
Discussion
The Sexual Assault Reform Act was enacted in 2000. It is codified in part as section 259-c (14) of the Executive Law.
*924 At the time of the commission of the offense, the statute prevented paroled sex offenders whose victims were children from entering “school grounds” as defined in “paragraph (a)” of Penal Law § 220.00 (14). This meant that such offenders could not enter “in or on or within” any building, structure, athletic field, playground or “land contained within the real property boundary line” of a public or private school.
Paragraphs (a) and (b) of Penal Law § 220.00 (14) define “school grounds” as:
“(a) in or on or within any building, structure, athletic playing field, playground or land contained within the real property boundary line of a public or private elementary, parochial, intermediate, junior high, vocational or high school, or (b) any area accessible to the public located within one thousand feet of the real property boundary line comprising any such school or any parked automobile or other parked vehicle located within one thousand feet of the real property boundary line comprising any such school. For the purposes of this section an ‘area accessible to the public’ shall mean sidewalks, streets, parking lots, parks, playgrounds, stores and restaurants.”
It is clear that the drafters of SARA did not intend to incorporate “paragraph (b)” of section 220.00 (14).
Section 259-c of the Executive Law enumerates the specific functions, powers and duties of the Division of Parole. A reference to “paragraph (a)” was deleted from Executive Law § 259-c (14) by Laws of 2005, chapter 544, enacted August 19, 2005— approximately one month after petitioner’s crime — and taking effect on September 1, 2005.
Executive Law § 259-c (14), as amended, states:
“notwithstanding any other provision of law to the contrary, where a person serving a sentence for an offense defined in article one hundred thirty, one hundred thirty-five or two hundred sixty-three of the penal law or section 255.25, 255.26 or 255.27 of the penal law and the victim of such offense was under the age of eighteen at the time of such offense or such person has been designated a level three sex offender pursuant to subdivision six of section one hundred sixty-eight-Z of the correction law, is released on parole or conditionally released pursuant to subdivision one or two of this section, *925 the board shall require, as a mandatory condition of such release, that such sentenced offender shall refrain from knowingly entering into or upon any school grounds, as that term is defined in subdivision fourteen of section 220.00 of the penal law, or any other facility or institution primarily used for the care or treatment of persons under the age of eighteen while one or more of such persons under the age of eighteen are present, provided however, that when such sentenced offender is a registered student or participant or an employee of such facility or institution or entity contracting therewith or has a family member enrolled in such facility or institution, such sentenced offender may, with the written authorization of his or her parole officer and the superintendent or chief administrator of such facility, institution or grounds, enter such facility, institution or upon such grounds for the limited purposes authorized by the parole officer and superintendent or chief officer. Nothing in this subdivision shall be construed as restricting any lawful condition of supervision that may be imposed on such sentenced offender.”
By deleting the reference to “paragraph (a),” the Legislature incorporated Penal Law § 220.00 (14) in its entirety into Executive Law § 259-c (14) and effectively provided that the parole offenders referenced by the statute are subject to mandatory parole conditions requiring them to “refrain from knowingly entering into or upon” “any area accessible to the public located within one thousand feet of the real property boundary line comprising any [public or private elementary, parochial, intermediate, junior high, vocational, or high] school.”
In the instant proceeding, it is undisputed that petitioner’s apartment is located within 1,000 feet of “school grounds” as defined by the statute. If he were to return to his apartment before the end of his parole in 2013, he would thus be violating the geographical restriction of the statute as well as the special and mandatory conditions of his parole. He would be subject, therefore, to reincarceration.
Counsel for petitioner argues that, as applied to petitioner, the 2005 amendment to SARA operates as an unconstitutional ex post facto law. The amendment adding the 1,000-foot school “buffer zone” to Executive Law § 259-c (14) was enacted subsequent to the commission of petitioner’s offense. Therefore, *926 if the amendment is “punitive” in purpose or effect, its application to petitioner makes it an unconstitutional ex post facto law. Petitioner asserts that there are so many schools as defined by the statute in Manhattan that, in effect, the statute banishes such parolees from Manhattan, and banishment is historically a form of punishment.
In response, the Division of Parole argues that the residency requirement does not violate the Ex Post Facto Clause, for the proscription was not done to punish petitioner. Rather, it is directly related to limiting his ability to reoffend while on parole. Respondent asserts that the intent of the statute is not punitive, but to protect public safety. Respondent points out that other jurisdictions have upheld the subsequent imposition of a residency requirement on paroled sex offenders. Moreover, the law does not banish petitioner from all of New York City because he is currently able to reside in the Bronx.
The Ex Post Facto Clause of article I, § 10 of the Constitution prohibits the states from enacting laws that increase punishment for criminal acts after they have been committed. (See generally Calder v Bull, 3 Dall [3 US] 386, 390 [1798].) To determine whether a statute violates the Ex Post Facto Clause by imposing such punishment, we must apply the framework outlined in Smith v Doe (538 US 84, 92 [2003]), where the Supreme Court considered an ex post facto challenge to an Alaska statute requiring sex offenders to register. Under that framework, we must first “ascertain whether the legislature meant the statute to establish ‘civil’ proceedings” (id. [some internal quotation marks omitted]). If the legislature intended criminal punishment, then the legislative intent controls the inquiry and the law is necessarily punitive (id.). If, however, the legislature intended its law to be civil and nonpunitive, then we must determine whether the law is nonetheless “so punitive either in purpose or effect as to negate” the state’s nonpunitive intent (id. [internal quotation marks omitted]). “[0]nly the clearest proof” will transform what the legislature had denominated a civil regulatory statute into a criminal penalty (id.).
The slim legislative history — as cobbled together from the papers — is as follows:
According to petitioner, the legislation proposing to establish the 1,000-foot “buffer zones” around schools was introduced six days before the end of the 2005 legislative session as 2005 NY Senate-Assembly Bill S479-A, A8894. The law was enacted on *927 the last day of the session without any public hearing or opportunity for public comment. The Assembly Sponsor’s Memorandum in Support states that the bill’s “PURPOSE” was to prohibit certain sex offenders “from entering upon school grounds or other facilities where the individual has been designated as a level three sex offender.” The “SUMMARY OF PROVISIONS” then discusses how level three high-risk offenders must “refrain from entering upon school grounds or other facilities where children are cared for.” The memorandum does not mention or otherwise discuss the addition of the residency requirement or the alteration of the cross-reference to the Penal Law, which had the effect of imposing a new rule that the affected offenders could not live within 1,000 feet of school grounds. According to petitioner, the legislative history supports the lawmakers’ intent to extend to level three offenders the existing restriction governing offenders with child victims, but the history is completely silent with respect to the reasons for the imposition of the 1,000-foot barrier or “buffer zone.”
In contrast, respondent contends that the Legislature did not view the 2005 amendment to Executive Law § 259-c (14), changing the definition of “school grounds” to include the entirety of Penal Law § 220.00 (14) as punitive, but, rather, as a protective measure to protect “vulnerable populations, children, against sex offenders.” According to respondent, the Memorandum of the Assembly Rules Committee stated, “There is a need to prohibit those sex offenders who are determined to pose the most risk to children from entering upon school grounds or other areas where children are cared for” (see Bill Jacket, L 2005, ch 544, 2005 NY Legis Ann, at 321).
Based on the legislative history, we find that the Legislature had two specific purposes in mind in passing the legislation. On the one hand, the law is intended to protect children. On the other hand, the law is also intended to increase punishment against convicted sex offenders. It is telling that the definition of “school grounds” is contained in the Penal Law. On its face, the law applies only to individuals who are on parole, and parole is a form of punishment. Likewise, Executive Law § 259-c (14) deals exclusively with parole. By contrast, the Court of Appeals has held that the Sex Offender Management and Treatment Act (SOMTA) “is not a penal statute designed to punish a past crime, but a remedial one designed to prevent a future crime” (People v Harnett, 16 NY3d 200, 206 [2011]). Unlike the legislation at issue in the present matter, SOMTA is codified in the Mental Hygiene Law.
*928 Even if we assume for the sake of argument that the purpose of the statute is purely civil in nature, the statute as applied to petitioner is clearly punitive in effect.
It is undisputed that petitioner’s apartment in Manhattan falls within the geographic restriction of the statute. Moreover, petitioner has convinced the court that, based on the number of places fitting the definition of “school grounds” as defined by the statute, he has effectively been banished from Manhattan, where he has lived most of his life. The Division of Parole disapproved a proposed residence in Brooklyn. In addition, the affidavit of a parole officer hints that even petitioner’s current placement in the Bronx is problematic.
Richard Rosado, a Senior Parole Officer employed by the Division of Parole, acknowledged in a sworn affidavit that “there have been difficulties with locating a residence for Plaintiff [sz'c] that complies with S.A.R.A.” (Rosado aff, at 2, para 5). Rosado conducted a search to determine whether University Nursing Home in the Bronx complied with the statute. However, based on the facts in his affidavit, it is unclear whether petitioner’s current residence complies with the law.
Rosado stated that a computer search
“did not identify any schools within a 1000 foot radius other than ABC Training Center, located at 1 East Fordham Road, Bronx, New York. However, that school, which has a website at www.abctrainingcenter.net, is a career training school for Certified Nurse Aides, Home Health Aides, Medical Assistants, bartenders, and assorted technical fields. Petitioner’s residence is within 1000 feet of ABC training center. Therefore, since it is not a school that is likely to have students under the age of eighteen, Petitioner’s residence within 1000 feet of ABC training center would not violate the S.A.R.A. requirements.”
In light of the parole officer’s qualifying language that the school is not “likely” to enroll students under the age of 18, there is reason to doubt whether petitioner’s current location really complies with SARA.
Petitioner cites a case from a sister state that is highly instructive.
In Commonwealth v Baker (295 SW3d 437 [Ky 2009]), the Supreme Court of Kentucky analyzed an amended statute setting forth residency restrictions for registered sex offenders. *929 The court held that the legislature intended the amended statute to be a civil, nonpunitive, regulatory scheme. The court found that the statute was excessive with respect to the nonpunitive purpose of public safety, however, because the law failed to make any type of individualized assessment as to whether a particular offender is a threat to public safety. The court wrote:
“We believe that the magnitude of the restraint involved in residency restrictions is sufficient for a lack of individual assessment to render the statute punitive.
“The record before us does not reveal whether or not [the offender] might be a threat to children and to public safety. But this is exactly why [the statute] is excessive. Given the drastic consequences of Kentucky’s residency restrictions, and the fact that there is no individual determination of the threat a particular registrant poses to public safety, we can only conclude that [the statute] is excessive with respect to the nonpunitive purpose of public safety.” (Baker, 295 SW3d at 446 [internal quotation marks omitted].)
Here — as in Baker — there is a no individual assessment whatsoever. Petitioner is 77 years old and suffers health problems. He is a low-risk, level one sex offender, and this is his first offense. It is clear that he poses a minimal threat to children and to public safety. Under such circumstances, the court finds that the lack of individual assessment renders the statute punitive.
In conclusion, the court finds that the statute as applied to petitioner violates the Ex Post Facto Clause of the Constitution. We note that courts in four other states have found that the application of similar statutes to sex offenders violated prohibitions on ex post facto laws (see F.R. v St. Charles County Sheriff’s Dept., 301 SW3d 56 [Mo 2010]; Commonwealth v Baker, supra; State v Pollard, 908 NE2d 1145 [Ind 2009]; and Mikaloff v Walsh, 2007 WL 2572268, 2007 US Dist LEXIS 65076 [ND Ohio 2007]).
Since the ex post facto issue is dispositive of the proceeding, we do not reach petitioner’s remaining arguments.
Accordingly, petitioner is permitted to reside in his apartment for the remainder of his parole, subject to appropriate conditions to protect children and public safety within respondent’s discretion.
*930 For the above reasons, the petition is granted, and the matter is remanded to the New York State Division of Parole for action consistent with the court’s decision.