[945 NE2d 439, 920 NYS2d 246]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID M. HARNETT, Appellant.

Argued January 6, 2011; decided February 10, 2011

**POINTS OF COUNSEL**

*Brian M. Callahan*, Duanesburg, for appellant. I. The trial court's failure to advise appellant of the direct consequences of his plea, related to the Sex Offender Management and Treatment Act, resulted in a guilty plea which was not knowingly, intelligently and voluntarily entered. (*People v Ford*, 86 NY2d 397; *People v Seaberg*, 74 NY2d 1; *People v Francabandera*, 33 NY2d 429; *People v Catu*, 4 NY3d 242.) II. Fundamental fairness requires that a defendant be advised of consequences related to the Sex Offender Management and Treatment Act before entering a plea of guilty to a felony sex offense. (*People v Catu*, 4 NY3d 242.)

*Robert M. Carney, District Attorney*, Schenectady (*Gerald A. Dwyer* of counsel), for respondent. I. The potential for civil commitment under the Sex Offender Management and Treatment

Act is a collateral consequence of a guilty plea to a sex offense. (*People v Lopez*, 6 NY3d 248; *People v Seaberg*, 74 NY2d 1; *People v Ford*, 86 NY2d 397; *People v Catu*, 4 NY3d 242; *Matter of State of New York v Farnsworth*, 75 AD3d 14; *People v Gravino*, 14 NY3d 546; *Matter of North v Board of Examiners of Sex Offenders of State of N.Y.*, 8 NY3d 745; *People v Taylor*, 60 AD3d 444, 12 NY3d 860; *Steele v Murphy*, 365 F3d 14; *Cuthrell v Director, Patuxent Inst.*, 475 F2d 1364.) II. This Court should not adopt the "fundamental fairness" standard of *State v Bellamy* (178 NJ 127, 835 A2d 1231 [2003]). (*Johnson v Rosemeyer*, 117 F3d 104.) III. If fundamental fairness mandates reversal, the new rule should be applied prospectively. (*People v Pepper*, 53 NY2d 213; *People v Sayers*, 22 NY2d 571.)

*Derek Champagne, District Attorney*, White Plains (*Steven A. Bender, Morrie Kleinbart* and *Richard Longworth Hecht* of counsel), for District Attorneys Association of the State of New York, amicus curiae. Sex Offender Management and Treatment Act is a collateral, not direct, consequence of a conviction; thus, a trial court's failure pre-plea to advise a defendant of the future possibility of civil confinement or supervision does not, alone, undermine an otherwise voluntary, knowing and intelligent guilty plea. (*People v Gravino*, 14 NY3d 546; *People v Ford*, 86 NY2d 397; *People v Harris*, 61 NY2d 9; *Boykin v Alabama*, 395 US 238; *Cuthrell v Director, Patuxent Inst.*, 475 F2d 1364, 414 US 1005; *Brady v United States*, 397 US 742; *People v Catu*, 4 NY3d 242; *Matter of State of New York v Farnsworth*, 75 AD3d 14; *Kansas v Hendricks*, 521 US 346; *Matter of North v Board of Examiners of Sex Offenders of State of N.Y.*, 8 NY3d 745.)

*New York Civil Liberties Union Foundation*, New York City (*Andrew L. Kalloch, Katharine E.S. Bodde, Corey Stoughton, Christopher Dunn* and *Arthur Eisenberg* of counsel), for New York Civil Liberties Union, amicus curiae. I. The history of sex offender regulation shows a clear trend toward more onerous consequences. II. This Court's decision in *People v Gravino* (14 NY3d 546 [2010]) and the Supreme Court's decision in *Padilla v Kentucky* (559 US —, 130 S Ct 1473 [2010]) reject a formulaic application of the direct/collateral consequences doctrine, and instruct courts to scrutinize the practical effects of said consequences. (*People v Catu*, 4 NY3d 242; *People v Ford*, 86 NY2d 397; *Boykin v Alabama*, 395 US 238.) III. Because the threat of lifelong civil commitment is an extraordinarily severe consequence of a criminal conviction, the failure of a court to notify a defendant of that threat violates defendant's right to due

process. (*People v Gravino*, 14 NY3d 546; *People v Catu*, 4 NY3d 242; *Foucha v Louisiana*, 504 US 71; *United States v Salerno*, 481 US 739; *DeShaney v Winnebago County Dept. of Social Servs.*, 489 US 189; *Kansas v Hendricks*, 521 US 346; *Addington v Texas*, 441 US 418; *Morrissey v Brewer*, 408 US 471; *United States v Gordon*, 156 F3d 376; *Shiwlochan v Portuondo*, 345 F Supp 2d 242.)

*Alfred O'Connor*, Albany, for New York State Defenders Association, amicus curiae. Because discretionary sentencing decisions affect or influence the likelihood of subsequent sex offender civil management, a severe ramification of a felony conviction and sentence, criminal court judges should be required to advise defendants about Mental Hygiene Law article 10 when accepting guilty pleas to qualifying offenses. (*People v Ford*, 86 NY2d 397; *People v Gravino*, 14 NY3d 546; *People v Hoti*, 12 NY3d 742; *Kansas v Crane*, 534 US 407; *People v Catu*, 4 NY3d 242; *Smith v Doe*, 538 US 84; *Kansas v Hendricks*, 521 US 346; *United States v Ursery*, 518 US 267; *Matter of State of New York v J.A.*, 21 Misc 3d 806; *Matter of George L.*, 85 NY2d 295.)

## OPINION OF THE COURT

Smith, J.

We hold that failing to warn a defendant who pleads guilty to a sex offense that he may be subject to the Sex Offender Management and Treatment Act (SOMTA) does not automatically invalidate the guilty plea.

### I

Defendant pleaded guilty to sexual abuse in the first degree, consisting of sexual contact with a person under 11 years old (Penal Law § 130.65 [3]). During the plea allocution, defendant was told that he would be sentenced to seven years in prison, with a period of postrelease supervision to be set by the court between 3 years and 10 years; that he would be subject to an order of protection for 15 years; and that he would be required to register as a sex offender. No mention was made of SOMTA (Mental Hygiene Law § 10.01 *et seq.*).

Defendant did not move, either before or after sentence, to withdraw his plea. After being sentenced, however, he appealed to the Appellate Division, arguing that his plea was not knowing, voluntary and intelligent because he had not been warned of its possible consequences under SOMTA. The Appellate

Division affirmed, with two Justices dissenting (72 AD3d 232 [2010]). A Justice of the Appellate Division granted leave to appeal, and we now affirm.

II

We begin by describing the consequences under SOMTA that could result from defendant's plea.

Defendant's conviction and incarceration made him a "detained sex offender" subject to SOMTA (Mental Hygiene Law § 10.03 [g]). That status becomes significant as the end of an offender's prison term approaches. When a detained sex offender "is nearing an anticipated release," a notice to that effect is given to the Attorney General and the Commissioner of Mental Health (Mental Hygiene Law § 10.05 [b]). The offender's case is then reviewed by Office of Mental Health (OMH) staff and, if the staff finds further action appropriate, by a three member "case review team" including qualified professionals (Mental Hygiene Law § 10.05 [a], [d]). The case review team must "consider whether the respondent is a sex offender requiring civil management," and if it finds that he is it give notice both to the offender and to the Attorney General (Mental Hygiene Law § 10.05 [e], [g]).

The Attorney General then decides whether to file a "sex offender civil management petition" in court (Mental Hygiene Law § 10.06 [a]). If he does so, a series of proceedings follows, including a hearing without a jury on whether there is "probable cause to believe" that the person in question is "a sex offender requiring civil management" (Mental Hygiene Law § 10.06 [g]) and a jury trial at which the jury decides whether the offender "suffers from a mental abnormality" (Mental Hygiene Law § 10.07 [a]). A person found to be a detained sex offender who suffers from a mental abnormality must be classified by the court as either "a dangerous sex offender requiring confinement" or "a sex offender requiring strict and intensive supervision" (Mental Hygiene Law § 10.07 [f]). A detained sex offender in the former category "shall be committed to a secure treatment facility . . . until such time as he or she no longer requires confinement" (id.).

SOMTA was enacted in 2007. A 2010 report by the Attorney General provides some information on how it has worked in practice (New York State Office of the Attorney General, A Report on the 2007 Law that Established Civil Management for Sex Offenders in New York State [Apr. 13, 2010], available

at http://www.ag.ny.gov/bureaus/sexual_offender/pdfs/
April%202010%20Yearly%20Report.pdf). The report says that,
during SOMTA's first three years, OMH screened 4,399 new
cases, of which 383 were ultimately referred for litigation. As of
the date of the Attorney General's report, 123 people had been
committed to a secure facility under SOMTA. In 79 cases, an
outpatient regime of strict and intensive supervision and treat-
ment was imposed, and litigation was continuing in a number
of other cases. Making allowance for the cases still in the
pipeline, it seems that, at most, about six percent of those
detained sex offenders whose cases came up in the first three
years were or were likely to be subjected to civil commitment.

### III

Defendant argues that the failure to advise him of the SOMTA
consequences of his conviction invalidated his plea because (1)
they are direct consequences of the plea, and (2) whether direct
or collateral, they are so important that their nondisclosure
rendered the plea proceedings fundamentally unfair. Defend-
ant's first argument is plainly without merit. The second raises
a serious question, but does not justify the result—automatic
invalidation of the plea—that defendant seeks.

Direct versus Collateral Consequences

Our cases have drawn a line between the direct and collateral
consequences of a plea (*see People v Ford*, 86 NY2d 397 [1995];
*People v Catu*, 4 NY3d 242 [2005]; *People v Gravino*, 14 NY3d
546 [2010]). The importance of the distinction is that a trial
court "*must* advise a defendant of the direct consequences"
(*Catu*, 4 NY3d at 244 [emphasis added]). A court's failure to
comply with that obligation "requires reversal" because harm-
less error analysis is inapposite (*id.* at 245). The possibility of
supervision or confinement under SOMTA is clearly on the col-
lateral side of the line.

Direct consequences, as we explained in *Ford*, are those
that have "a definite, immediate and largely automatic effect on
defendant's punishment" (86 NY2d at 403). Consequences that
are "peculiar to the individual's personal circumstances and
. . . not within the control of the court system" have been held
to be collateral (*id.*). The direct consequences of a plea—those
whose omission from a plea colloquy makes the plea per se in-
valid—are essentially the core components of a defendant's
sentence: a term of probation or imprisonment, a term of post-
release supervision, a fine. Our cases have identified no others.

We held in *Ford* and *Gravino* that consequences that may be quite serious—possible deportation in *Ford*, Sex Offender Registration Act (SORA) requirements and onerous terms of probation in *Gravino*—are collateral.

These decisions compel a holding that SOMTA consequences are collateral also. Indeed, *Gravino* is indistinguishable here, for all the factors that led us to hold SORA registration a collateral consequence apply equally, or a fortiori, to SOMTA. SOMTA, like SORA, is not a penal statute designed to punish a past crime, but a remedial one designed to prevent a future crime (*see Gravino*, 14 NY3d at 556); with SOMTA, as with SORA, important decisions and recommendations must be made, after the time of the guilty plea, by administrative agencies not under the court's control (*see id.*); and with SOMTA, even more than with SORA, the consequences of a defendant's plea are far from automatic. Indeed, experience to date indicates that the large majority of people who are "detained sex offenders" as SOMTA defines the term will suffer no consequences from that designation at all.

Fairness

Defendant's stronger argument is that SOMTA consequences, whether collateral or not, are simply too important to be left out of a plea allocution. He relies primarily on a New Jersey case, *State v Bellamy* (178 NJ 127, 835 A2d 1231 [2003]).

The facts of *Bellamy* did indeed raise serious fairness questions. Bellamy pleaded guilty to a sex crime in exchange for the State's agreement to recommend an 18-month jail sentence. When he pleaded, he had already served a significant part of that time; when sentenced, he was scheduled to be released in a bit more than two months. But a week before his release date the New Jersey Attorney General began a proceeding under the New Jersey Sexually Violent Predator Act that resulted in Bellamy's commitment. At the time of the New Jersey Supreme Court's decision three years later, he was still incarcerated.

These facts form the background for the *Bellamy* court's holding "that fundamental fairness requires that prior to accepting a plea to a predicate offense, the trial court must inform a defendant of the possible consequences under the [Sexually Violent Predator] Act" (178 NJ at 131, 835 A2d at 1234). That holding, however, did not lead automatically to the nullification of Bellamy's plea. Rather, the court remanded the case to permit a motion for plea withdrawal, which it said should be granted

"[i]f the trial court is satisfied that defendant did not understand the consequences of his plea" (178 NJ at 140, 835 A2d at 1239).

Certainly, if facts like those of *Bellamy* were before us, the argument that the plea was involuntary would have to be taken seriously. And to avoid the possibility that such cases will arise, we recommend to trial courts that the possible effects of SOMTA be explained to anyone pleading guilty to an offense that may result in SOMTA proceedings. We are not prepared to hold, however, that every failure to make such an explanation entitles the defendant to take his plea back.

There is no indication in this record that this defendant's situation is like Bellamy's. It is not asserted that this defendant has been made the subject of a SOMTA proceeding, and we cannot tell on this record whether there is or ever was any significant likelihood that that would occur. As we made clear in *Gravino*, where collateral consequences of a plea are an issue, claims that a nondisclosure rendered the plea involuntary are best evaluated on a case by case basis, in the context of a motion by a defendant to withdraw his plea.

We said in *Gravino* that "[t]here may be cases in which a defendant can show that he pleaded guilty in ignorance of a consequence that, although collateral for purposes of due process, was of such great importance to him that he would have made a different decision had that consequence been disclosed" (14 NY3d at 559). We observed that such cases would be "rare," because "in the vast majority of plea bargains the overwhelming consideration for the defendant is whether he will be imprisoned and for how long" (*id.*). But since SOMTA consequences can include extended confinement, a plea made in ignorance of such consequences may sometimes be proved involuntary—if a defendant can show that the prospect of SOMTA confinement was realistic enough that it reasonably could have caused him, and in fact would have caused him, to reject an otherwise acceptable plea bargain. Of course, in such cases the defendant will have to prove that he did not know about SOMTA—i.e., that his lawyer did not tell him about it—before he pleaded guilty. Thus, the issue of whether the plea was voluntary may be closely linked to the question of whether a defendant received the effective assistance of counsel (*cf. Padilla v Kentucky*, 559 US —, 130 S Ct 1473 [2010]).

This defendant has not moved to withdraw his plea. On this record, we do not know either whether his lawyer told him about

SOMTA or whether, considering the facts of defendant's situation, SOMTA would have been a significant factor in the evaluation of a plea bargain. In short, defendant has not made the factual showing that would justify plea withdrawal. He is therefore not entitled to relief on this appeal.

Accordingly, the order of the Appellate Division should be affirmed.

CIPARICK, J. (dissenting). Because I believe that civil confinement under the Sex Offender Management and Treatment Act (SOMTA) is so grave a deprivation of liberty that a plea should not be considered knowing and voluntary unless the defendant is aware of it, I respectfully dissent.

Once again we are confronted with deciding whether a consequence of a plea should be considered direct or collateral. In *People v Gravino* (14 NY3d 546 [2010]), we held that Sex Offender Registration Act (SORA) registration is a collateral consequence of a sex offense conviction. It is well settled that a direct consequence is one with a "definite, immediate and largely automatic effect on a defendant's punishment" (*Gravino*, 14 NY3d at 554, quoting *People v Ford*, 86 NY2d 397, 403 [1995] [brackets omitted]). We determined in *Gravino* that SORA registration is collateral because it is nonpenal and its specific consequences will vary by defendant (*see id.* at 556-557). The same is true for SOMTA eligibility.

I dissented in *Gravino* on the ground that because imposition of SORA registration is mandatory and known at the time of the plea, it ought to be considered a direct consequence of that plea (*see id.* at 561 [Ciparick, J., dissenting]). This rationale likewise applies to defendant's automatic eligibility for SOMTA review. All defendants convicted of sexual abuse in the first degree and sentenced to a prison term are "detained sex offenders" under SOMTA (Mental Hygiene Law § 10.03 [g]). The statute requires that the Attorney General and Commissioner of Mental Health receive notice of a detained sex offender's scheduled release date and provides the authority to take further action towards civil management, if warranted (Mental Hygiene Law § 10.05 [b], [d], [e], [g]; § 10.06 [a]). Nevertheless, I acknowledge that following our holding in *Gravino*, SOMTA review must be considered a collateral consequence.

Under most circumstances, this would end our analysis, since a court's failure to warn a defendant of collateral consequences generally does not merit withdrawal of a plea (*see People v Catu*,

4 NY3d 242, 244 [2005]). Here, however, we are confronted with a consequence that, though technically nonpenal and not applied to every defendant, may result in a period of confinement lengthier than a defendant's prison sentence (see Mental Hygiene Law § 10.07 [f]; § 10.09 [a], [h]; § 10.10 [a]). In this sense, as the Appellate Division dissent noted, "it constitutes a potentially greater deprivation of liberty than the criminal sentence imposed," and is closer to a direct consequence than those traditionally considered collateral (People v Harnett, 72 AD3d 232, 236 [3d Dept 2010]).

A trial court has a constitutional obligation to ensure that a defendant has a "full understanding of what the plea connotes and its consequences" (Ford, 86 NY2d at 402-403). "[D]ue process requires that the record must be clear that the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant" (id. at 403 [internal quotation marks omitted]). While a trial court generally has no obligation to inform a defendant of collateral consequences, regardless of their severity (see Gravino, 14 NY3d at 556-557), I believe a defendant cannot be said to knowingly and voluntarily forgo his right to trial if he does not know the full extent of confinement that might result from his conviction. "Freedom from bodily restraint [is] at the core of the liberty protected by the Due Process Clause" (Foucha v Louisiana, 504 US 71, 80 [1992]). Moreover, "in the vast majority of plea bargains the overwhelming consideration for the defendant is whether he will be imprisoned and for how long" (Gravino, 14 NY3d at 559).

Although SOMTA confinement follows a separate administrative evaluation, probable cause hearing, and jury trial, it is the initial conviction that determines a defendant's eligibility for that evaluative process.* Even the majority here "recommend[s] to trial courts that the possible effects of SOMTA be explained to anyone pleading guilty to an offense that may result in SOMTA proceedings" (majority op at 207). The dissent below and the Supreme Court of New Jersey have aptly noted that where, as here, a potential consequence of a plea is confinement well beyond the penal sentence, fundamental fairness requires the defendant's knowledge of that consequence (see State v

---

* The majority's calculation that, at most, approximately six percent of sex offenders screened under SOMTA during its first three years were civilly committed is beside the point (majority op at 205); any chance that a defendant will face further confinement as a result of his plea should be made known to him at the time the plea is taken.

*Bellamy,* 178 NJ 127, 139, 835 A2d 1231, 1238 [2003]; *Harnett,* 72 AD3d at 237).

As the majority observes, a defendant who has pleaded guilty in ignorance of a collateral consequence may successfully move to withdraw his plea upon making an individualized showing that he would not have so pleaded had he been aware of the consequence (*Gravino,* 14 NY3d at 559). Treating SOMTA eligibility as a standard collateral consequence, the majority finds the record on this appeal insufficient to support defendant's claim, since he has failed to show that any SOMTA proceeding has been or is likely to be brought against him, his ignorance of SOMTA at the time of the plea, and that it would have impacted his decision to plead guilty (majority op at 207). In my view, defendant should be given an opportunity to put before County Court in a motion to withdraw his plea or other appropriate motion the specifics which are lacking in this record.

By pleading guilty, defendant exposed himself to the possibility that he would be confined after expiration of his prison sentence, perhaps indefinitely. County Court should have confirmed defendant's awareness of that fact before accepting his guilty plea. Thus, I would remit to County Court to allow defendant to move to withdraw his plea.

Chief Judge LIPPMAN and Judges GRAFFEO, READ and PIGOTT concur with Judge SMITH; Judge CIPARICK dissents and votes to reverse in a separate opinion in which Judge JONES concurs.

Order affirmed.