[992 NYS2d 862]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v SALOMON RODRIGUEZ, Defendant.

Supreme Court, Queens County, September 10, 2014

**APPEARANCES OF COUNSEL**

*Frank Livoti* for defendant.

*Richard A. Brown, District Attorney* (*Debra Bresnahan* of counsel), for plaintiff.

## OPINION OF THE COURT

ELISA S. KOENDERMAN, J.

The defendant, Salomon Rodriguez, moves pursuant to Criminal Procedure Law § 220.60 (3) to withdraw his guilty plea to the offenses of attempted sexual abuse in the first degree (Penal Law §§ 110.00, 130.65 [3]) and sexual abuse in the second degree (Penal Law § 130.60 [2]) on the ground that it was involuntary due to the ineffective assistance of counsel. In pertinent part, the defendant alleges that his attorney wrongly advised him that he would not have to register as a sex offender due to his conviction. Because the record demonstrates that, regardless of whether his attorney failed to provide the correct advice, the court informed the defendant of this collateral consequence of his conviction, the defendant's motion is summarily denied.

The defendant was arraigned on October 19, 2011 on a felony complaint charging him with sexual abuse in the first degree (Penal Law § 130.65 [3]) and endangering the welfare of a child (Penal Law § 260.10 [1]). Bail was set at $10,000 insurance company bond or $10,000 cash in the alternative.[1] The defendant executed a written waiver of his statutory speedy trial rights until November 28, 2011 and the court adjourned the matter for conference to November 14, 2011. On November 14, 2011, the defendant declined to extend the waiver of his statutory speedy trial rights and the matter was adjourned to December 19, 2011 for grand jury action. On December 19, 2011, the defendant once again waived his statutory speedy trial rights until January 17, 2012 and the matter was adjourned to January 3, 2012 for conference.

On January 3, 2012, under oath, through an official court interpreter, the defendant waived prosecution by indictment and pleaded guilty, under a superior court information, to the E felony of attempted sexual abuse in the first degree and the A misdemeanor of sexual abuse in the second degree, with the understanding that if he completed a 104-session sex offender program, abided by a full order of protection on behalf of the complainant, had no rearrests for any new offenses, and no bench warrants issued for his failure to appear in court as required, he would be entitled to withdraw his felony plea and

---

1. The defendant posted bond on October 20, 2011.

be sentenced to six years' probation on the misdemeanor offense. Conversely, if the defendant failed to comply with any one of the specified conditions, he would be prohibited from withdrawing his plea and instead would face a maximum sentence of four years' imprisonment and 10 years' postrelease supervision on the felony offense. The defendant acknowledged that he had discussed pleading guilty fully with his attorney, that no threats or promises were made to induce his plea, and that he was pleading guilty freely and voluntarily. The defendant affirmed that he understood that by pleading guilty he was giving up his important constitutional rights to a jury trial, to confront the witnesses against him, to remain silent and be presumed innocent, and to have the prosecution prove his guilt beyond a reasonable doubt. The defendant also admitted that he subjected the complainant to sexual contact by rubbing her vagina and having her touch his penis. Additionally, when asked by the court whether he understood "that by pleading guilty to a sex offense in this case you will have to register as a sex offender for a minimum of 20 years," the defendant answered, "yes."

Nevertheless, the defendant contends that he should be allowed to withdraw his guilty plea because his attorney incorrectly informed him that he would not have to register as a sex offender as a consequence of his conviction. For the following reasons, the defendant's motion is denied.

The decision to grant a motion to withdraw a guilty plea rests within the sound discretion of the sentencing court and will not be disturbed absent an improvident exercise of discretion (see People v Anderson, 98 AD3d 524 [2d Dept 2012], citing People v Seeber, 4 NY3d 780 [2005]). Only in rare instances will a defendant be granted a hearing (see id.). Moreover, "[a]bsent a showing that defendant's plea was baseless, [the sentencing court] must be entitled to rely on the record to ascertain whether any promises, representations, implications and the like were made to the defendant" (People v Frederick, 45 NY2d 520, 525 [1978]). Where the minutes of the plea are unequivocal and refute the defendant's claim of an off-the-record representation, the integrity of the plea negotiation process mandates denial of the motion (id. at 528).

Here, the record clearly demonstrates that the defendant voluntarily pleaded guilty, through an official court interpreter, after knowingly relinquishing his constitutional rights (see People v Fiumefreddo, 82 NY2d 536, 543 [1993]). Morever, the defend-

ant's allocution does not negate any element of the offense, call into question his admitted guilt or the voluntariness of his plea (*see Seeber*, 4 NY3d at 781; *People v Lopez*, 71 NY2d 662, 666 [1988]; *cf. People v Beasley*, 25 NY2d 483, 487 [1969]; *People v Serrano*, 15 NY2d 304, 308 [1965]; *compare People v Ramos*, 63 NY2d 640, 642-643 [1984]).

A trial court "may accept a guilty plea only after fulfilling its constitutional duty to 'ensure that [the] defendant . . . has a full understanding of what the plea connotes and its consequences' " (*People v Gravino*, 14 NY3d 546, 553 [2010], quoting *People v Ford*, 86 NY2d 397, 402-403 [1995]). Although no particular litany in allocution is required, due process mandates that the record demonstrates that " 'the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant' " (*Ford*, 86 NY2d at 402-403, quoting *North Carolina v Alford*, 400 US 25, 31 [1970]). Thus, while the court is "in no position to advise on all the ramifications of a guilty plea personal to a defendant," it must advise the defendant of all direct consequences of his plea (*id.*). Direct consequences are those which have a "definite, immediate and largely automatic effect on defendant's punishment" (*id.*). Some examples of direct consequences are the forfeiture of trial rights, the imposition of a mandatory term of imprisonment and the imposition of mandatory postrelease supervision (*see People v Peque*, 22 NY3d 168, 184 [2013]).

In contrast, the court may, but need not, inform the defendant about collateral consequences of a guilty plea (*see Gravino*, 14 NY3d at 553). Collateral consequences are those which are "peculiar to the individual's personal circumstances and . . . not within the control of the court system" (*Peque*, 22 NY3d at 184). They include the loss of the right to vote or travel abroad, loss of civil service employment, loss of a driver's license and the loss of the right to possess firearms (*see id.*). The duty to register and the possibility of civil commitment as a sex offender are also collateral consequences of which the court is not required to inform the defendant (*see id.* at 185, citing *Gravino*, 14 NY3d at 559; *People v Harnett*, 16 NY3d 200, 206 [2011]).[2]

---

**2.** Notwithstanding the above, the court must advise a defendant of the possibility of deportation as a result of a guilty plea to a felony (*see Peque*, 22 NY3d at 191-193). Although deportation is technically a collateral consequence since it is not part of a defendant's sentence and depends upon the outcome of a removal proceeding, under current federal law it is an automatic consequence of a felony guilty plea for most noncitizen defendants (*see id.* at

While the right to due process places an independent responsibility on the court to assure that the defendant understands the direct consequences of a guilty plea, the right to effective assistance of counsel guarantees the defendant "a zealous advocate to safeguard [his] interests" and to provide "essential advice specific to his . . . personal circumstances" so as to enable him to make an intelligent choice between pleading guilty and going to trial (*id.* at 190-191). Both the rights to due process and effective assistance of counsel, which exist to preserve the fairness of the criminal proceeding, "operate in discrete ways in the plea context" (*id.*). Although due process does not require the court to inform the defendant of collateral consequences "peculiar to [the defendant's] circumstances and . . . not within the control of the court system" (*id.* at 184), counsel has the distinct duty to provide advice which is "specific to [the defendant's] personal circumstances" (*id.* at 190-191) in order to render effective assistance.[3]

The Sex Offender Registration Act is not a penal but a remedial statute intended to prevent future crime (*see Gravino*, 14 NY3d at 556). The duty to register results from the conviction of a certain crime (*id.* at 556-557). The nature and extent of the conditions imposed upon a sex offender depend upon his risk level determination (*id.* at 556). Although an offender's risk level is a judicial determination, the Board of Examiners of Sex Offenders, an administrative agency, recommends a classification to the court (*id.*). As such, neither the registration requirement nor the risk level determination are a part of a defendant's sentence (*id.*). Hence, the duty to register as a sex offender is a collateral consequence of a guilty plea (*id.* at 556-557). The court's failure to mention it therefore does not, by itself, demonstrate that a defendant's plea was not knowing, intelligent and voluntary (*id.*).

---

191-192). Moreover, deportation has punitive qualities similar to a criminal sentence (*see id.*). Indeed, "the deportation process deprives the defendant of an exceptional degree of physical liberty by first detaining and then forcibly removing [him] from the country" (*id.* at 192). Deportation therefore resembles a direct consequence of a guilty plea (*see id.*). Consequently, if the court fails to inform a defendant that he may be deported as a result of his guilty plea to a felony, and the defendant is able to show that there is a reasonable probability that he would not have pleaded guilty but would have gone to trial had he been so informed, his plea will be deemed involuntary (*see id.* at 198).

**3.** In particular, counsel has the affirmative obligation to inform his client whether his plea entails a risk of deportation (*see Padilla v Kentucky*, 559 US 356, 374 [2010]).

In any event, sex offender registration "[u]nquestionably . . . imposes [a] significant burden[ ]" on the defendant (*id.*). Similarly, civil commitment as a sex offender is an important collateral consequence which is particularly severe since under the Sex Offender Management and Treatment Act a defendant may be confined for life (*see Peque*, 22 NY3d at 205 [Pigott, J., concurring], citing *Harnett*, 16 NY3d 200). Regardless, the court is not required to explain either consequence to a defendant before accepting his guilty plea (*see Gravino*, 14 NY3d at 556).

Nevertheless, if both the court and the defendant's attorney fail to disclose a consequence which "although collateral for purposes of due process, was of such great importance to [the defendant] that he would have made a different decision" had he been aware of it, he may be entitled to take back his plea (*see Harnett*, 16 NY3d at 207, citing *Gravino*, 14 NY3d at 559; *cf. People v Clark*, 261 AD2d 97, 100 [3d Dept 2000]). Although such cases will be " 'rare' " since " 'in the vast majority of plea bargains the overwhelming consideration for the defendant is whether he will be imprisoned and for how long' " (*see id.*, quoting *Gravino*, 14 NY3d at 559), the issue of whether the defendant's plea is voluntary "may be closely linked" to the question of whether he received the effective assistance of counsel (*id.*, citing *Padilla*, 559 US at 369).

Indeed, *Padilla* serves as precedent for the recognition that there are certain consequences of a conviction which, although not strictly direct, may be significant enough to a particular defendant to require that his attorney tell him about them before he pleads guilty (*see Padilla*, 559 US at 360). As the Supreme Court reasoned, "[w]e . . . have never applied a distinction between direct and collateral consequences to define the scope of constitutionally reasonable professional assistance" (*id.* at 365). Further, *Peque* acknowledges counsel's duty to impart "essential advice specific to [the defendant's] personal circumstances" (*Peque*, 22 NY3d at 190-191) as distinct from the court's responsibility to inform the defendant only of those consequences which have "a definite, immediate and largely automatic effect" on his punishment (*id.* at 184).

Yet even where counsel fails to give the defendant requisite advice, the defendant is not entitled to relief unless he has been prejudiced (*see Padilla*, 559 US at 369). Only if the defendant "can show that neither his counsel *nor the trial court* informed him" of a particular consequence "and that he would not have pleaded guilty had he been so informed" will he prevail on a

motion to take back his plea (*Peque*, 22 NY3d at 204-205 [emphasis added]). Accordingly, while the court's advice will not relieve counsel's obligation, it will nullify any prejudice from his error (*see People v Figari*, 40 Misc 3d 1232[A], 2013 NY Slip Op 51369[U] [Sup Ct, Bronx County 2013]; *United States v Bhindar*, 2010 WL 2633858, 2010 US Dist LEXIS 65421 [SD NY, June 30, 2010, No. 07 Cr 711-04(LAP)]).

Furthermore, where the evidence, law and circumstances of a particular case, viewed in totality as of the time of the representation, reveal that the attorney provided "meaningful representation," the defendant has received the effective assistance of counsel (*Ford*, 86 NY2d at 404, *overruled on other grounds Peque*, 22 NY3d at 195-196, citing *People v Baldi*, 54 NY2d 137, 147 [1981]). Meaningful representation does not equal perfect representation, however (*id.*, citing *People v Modica*, 64 NY2d 828, 829 [1985]). In particular, where neither counsel nor the court inform a defendant of his duty to register as a sex offender but the defendant receives "an advantageous plea and nothing in the record casts doubt on the apparent effectiveness of counsel," he is afforded meaningful representation (*People v Coss*, 19 AD3d 943, 944 [3d Dept 2005] [citations omitted], citing *People v Wright*, 295 AD2d 806, 807 [3d Dept 2002]).

Here, the defendant was originally charged in a felony complaint with the D violent felony offense of sexual abuse in the first degree. Had he been indicted and convicted after trial, he faced a maximum sentence of seven years in prison. Instead, he was allowed to plead guilty to the lesser nonviolent E felony offense of attempted sexual abuse in the first degree as well as the A misdemeanor offense of sexual abuse in the second degree, with the understanding that if he completed a sex offender treatment program,[4] he could withdraw his felony plea and receive a non-jail sentence on the misdemeanor.

Moreover, after advising the defendant of all of the direct consequences of his plea, including the constitutional rights he was forfeiting by pleading guilty, the court informed the defendant that by pleading guilty to a sex offense he would be required to register as a sex offender for a minimum of 20 years. Regardless of his attorney's advice, therefore, the defendant was aware of this collateral consequence of his conviction (*see People v Sharlow*, 12 AD3d 724, 725 [3d Dept 2004]).

---

4. In fact, the defendant successfully completed a 104-session sex offender program at Queens Counseling for Change.

In conclusion, the unequivocal minutes of the plea refute the defendant's claim that he would not have pleaded guilty but for his attorney's alleged misrepresentation (*see Frederick*, 45 NY2d at 528). Moreover, the record reveals that the defendant received an advantageous plea and casts no doubt upon his attorney's apparent effectiveness (*see Ford*, 86 NY2d at 404). Accordingly, the defendant's motion to withdraw his guilty plea is denied.