People v Maggio (2022 NY Slip Op 06262)

People v Maggio

2022 NY Slip Op 06262

Decided on November 9, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 9, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

VALERIE BRATHWAITE NELSON, J.P.
REINALDO E. RIVERA
JOSEPH A. ZAYAS
LARA J. GENOVESI, JJ.

2021-03145

[*1]The People of the State of New York, appellant,
v
Christopher Maggio, respondent. (S.C.I. No. 611/10)

Raymond A. Tierney, District Attorney, Riverhead, NY (Alfred J. Croce and Thomas C. Costello of counsel), for appellant.
Barket Epstein Kearon Aldea & LoTurco, LLP, Garden City, NY (Donna Aldea and Danielle Muscatello of counsel), for respondent.

DECISION & ORDER
Appeal by the People from an order of the Supreme Court, Suffolk County (Timothy P. Mazzei, J.), dated March 22, 2021, which granted, without a hearing, the defendant's motion pursuant to CPL 440.10 to vacate a judgment of the same court (James Hudson, J.) rendered April 6, 2010, convicting him of driving while intoxicated in violation of Vehicle and Traffic Law § 1192(3), upon his plea of guilty, and imposing sentence.
ORDERED that the order is reversed, on the law, the defendant's motion pursuant to CPL 440.10 to vacate the judgment rendered April 6, 2010 is denied, and the judgment is reinstated.
On March 3, 2010, the defendant appeared before the Supreme Court and entered a plea of guilty to driving while intoxicated in violation of Vehicle and Traffic Law § 1192(3). The court informed the defendant that, as a condition of his plea, the court was "obligated to revoke [his] privilege to operate a motor vehicle." The defendant then admitted that, on August 21, 2009, he consumed alcoholic beverages before operating a motor vehicle on a public highway in Suffolk County, and the consumption of those beverages rendered him intoxicated. On April 6, 2010, the defendant was sentenced in accordance with the plea agreement, and the sentence included a one-year revocation of his driver license.
On September 25, 2012, the New York State Department of Motor Vehicles (hereinafter DMV) adopted a regulation governing applications for relicensing following a license revocation made by persons with multiple alcohol-related or drug-related driving convictions. By letter dated November 7, 2012, a representative of the DMV informed the defendant that, pursuant to that regulation, his application to reinstate his driver license following the one-year revocation had been denied since he had "three or four alcohol- or drug-related driving convictions or incidents" (15 NYCRR 136.5[b][2]), in addition to "one or more serious driving offenses" (id.), within the 25 years preceding the date of the instant offense (see id. § 136.5[a][3]). The letter further advised the defendant that he could seek reconsideration of the DMV's determination on the basis of any "unusual, extenuating and compelling circumstances" that may exist in his case (id. § 136.5[d]).
In September 2020, the defendant moved pursuant to CPL 440.10 to vacate the judgment rendered April 6, 2010, on the ground that he was not made aware that entering a plea of guilty could result in the permanent revocation of his driver license and, thus, his right to due process had been violated. In an order dated March 22, 2021, the Supreme Court granted the defendant's motion to vacate the judgment of conviction and dismissed the accusatory instrument in the interest of justice. The People appeal.
CPL 440.10(1)(h) permits a court to vacate a judgment of conviction on the ground that "[t]he judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States." A plea of guilty will be upheld as valid if it was entered knowingly, voluntarily, and intelligently (see People v Fiumefreddo, 82 NY2d 536, 543; People v Lopez, 71 NY2d 662, 666; People v Harris, 61 NY2d 9, 17).
The Supreme Court erred in granting the defendant's motion to vacate the judgment of conviction on the ground that his plea of guilty was not entered knowingly, voluntarily, and intelligently. The subject regulation that led to the denial of the defendant's application for relicensing did not exist at the time he entered his plea of guilty, and it would have been impossible for the court to inform the defendant of consequences flowing therefrom (see People v DiTore, _____ AD3d _____, 2022 NY Slip Op 05541 [2d Dept]; People v Wheaton, 49 Misc 3d 378, 379 [Seneca County Ct]). "'The defendant's grievance lies with the enactment and enforcement of the new regulation, not the manner of his conviction'" (People v DiTore, _____ AD3d at _____, 2022 NY Slip Op 05541, *2, quoting People v Wheaton, 49 Misc 3d at 379).
In any event, contrary to the defendant's contention, the DMV's denial of his application for relicensing did not deprive him of the benefit of his plea agreement (see e.g. People v Varnum, 291 AD2d 724, 725). In rejecting a multifaceted challenge to the subject regulation, the Court of Appeals observed that the Vehicle and Traffic Law "contemplates that the Commissioner [of the DMV] will have exclusive authority over post-revocation relicensing, and that those relicensing determinations will be discretionary" (Matter of Acevedo v New York State Dept. of Motor Vehs., 29 NY3d 202, 220). Since an offender is not "entitled to relicensing under the Vehicle and Traffic Law upon expiration of the statutory revocation period" (id. at 219), the Supreme Court's imposition of a one-year license revocation in this case carried with it no guarantee that the defendant's driver license would be reinstated at the end of that one-year period. The subsequent adoption of the subject regulation had the effect of "formalizing" the Commissioner's discretion (id. at 220) by providing that relicensing applications by certain repeat offenders "shall" be denied (15 NYCRR 136.5[b][2]) in the absence of any "unusual, extenuating and compelling circumstances" (id. at 136.5[d]). While that may have increased the likelihood that the defendant's relicensing application would be denied, it does not alter our analysis, since the defendant had no enforceable expectation that his driver license would be reinstated in the first place.
Contrary to the defendant's further contention, his unawareness that, as a consequence of his entering a plea of guilty, his driver license might never be reinstated did not prevent his plea from being knowing, voluntary, and intelligent. To the extent that the potentially permanent license revocation authorized under the subject regulation is a consequence of the defendant's instant plea of guilty at all (see People v Avital, 64 Misc 3d 483, 485 [Town of East Fishkill Just Ct, Dutchess County] [denial of relicensing under 15 NYCRR 136.5 results not from any particular conviction, but from the applicant's "complete driving history"]), it is, as the defendant acknowledges, a collateral consequence of his plea (see People v Peque, 22 NY3d 168, 185, citing People v Ford, 86 NY2d 397, 403). The defendant contends, and the Supreme Court concluded in the order appealed from, that the effective lifetime suspension of his license to drive is a consequence that, although collateral, is "'of such great importance to him that he would have made a different decision had that consequence been disclosed'" (People v Peque, 22 NY3d at 192, quoting People v Gravino, 14 NY3d 546, 559). We disagree.
In People v Gravino (14 NY3d at 555-558), where the defendant was not advised at the time of her entering a plea of guilty that she would be required to register as a sex offender under the Sex Offender Registration Act (hereinafter SORA), the Court of Appeals held that SORA [*2]registration was a collateral consequence of the defendant's plea of guilty, not a direct consequence, and therefore her plea was knowing, voluntary, and intelligent despite her unawareness of the registration requirement at the time of her plea. In the companion case of People v Ellsworth, where the defendant entered a plea of guilty to course of sexual conduct against a child in the second degree, the Court held that a condition of the defendant's 10-year period of probation forbidding him from associating with any child under the age of 18, including his own children, was a collateral consequence of the defendant's plea of guilty, not a direct consequence, and his unawareness of that condition did not prevent his plea from being knowing, voluntary, and intelligent (see id. at 551-553, 558-559). The Court of Appeals recognized in Gravino that "[t]here may be cases in which a defendant can show that he [or she] pleaded guilty in ignorance of a consequence that, although collateral for purposes of due process, was of such great importance to him [or her] that he [or she] would have made a different decision had that consequence been disclosed" (id. at 559). The Court concluded, however, that "neither of the cases before us fits this description, and indeed such cases will be rare" (id.).
Subsequently, in People v Harnett (16 NY3d 200), the Court of Appeals addressed a defendant's argument that his plea of guilty was not knowing, voluntary, and intelligent because he was not warned that, as a "'detained sex offender,'" he was potentially subject to the Sex Offender Management and Treatment Act (hereinafter SOMTA), under which, after completing his prison term, he could be "'committed to a secure treatment facility . . . until such time as he . . . no longer require[d] confinement'" (id. at 204, quoting Mental Hygiene Law §§ 10.03[g], 10.07[f]). After concluding that SOMTA confinement, like SORA registration, was a collateral consequence of a conviction, the Court considered whether the possibility of SOMTA confinement was "'of such great importance'" that fundamental fairness nonetheless required that the defendant be warned of that consequence upon entering a plea of guilty (People v Harnett, 16 NY3d at 207, quoting People v Gravino, 14 NY3d at 559). The Court held that, although, under certain circumstances, and where a defendant can show that "the prospect of SOMTA confinement was realistic enough," he or she may be able to demonstrate that a plea of guilty entered without awareness of that consequence was not knowing, voluntary, and intelligent, as a general matter, a warning about SOMTA-related consequences is not required, and the absence of such a warning does not "automatically invalidate [a] guilty plea" (People v Harnett, 16 NY3d at 203, 207).
By contrast, in People v Peque (22 NY3d at 176), the Court of Appeals held that, although deportation from the United States is a collateral consequence of a criminal conviction, "due process compels a trial court to apprise a defendant that, if the defendant is not an American citizen, he or she may be deported as a consequence of a guilty plea to a felony." The Court explained that "deportation is a plea consequence of such tremendous importance, grave impact and frequent occurrence that a defendant is entitled to notice that it may ensue from a plea" (id.). A plurality of the Court distinguished the circumstances of Peque from those of Gravino and Harnett, reasoning that, "[u]nlike SORA registration, SOMTA confinement or other collateral consequences, the deportation process deprives the defendant of an exceptional degree of physical liberty by first detaining and then forcibly removing the defendant from the country" (id. at 192). The Peque plurality considered a warning necessary, even though deportation is "technically on the collateral side of the direct/collateral divide," because deportation "constitutes a uniquely devastating deprivation of liberty" (id. at 192, 193). Thus, a majority of the Court held that "deportation constitutes such a substantial and unique consequence of a plea that it must be mentioned by the trial court to a defendant as a matter of fundamental fairness" (id.).
Thus, the Court of Appeals has clearly indicated that a consequence of a conviction must represent an exceptionally severe liberty deprivation in order to fall within the narrow category of collateral consequences of which a defendant must be advised at the time of entering the plea. Given that SORA registration, a condition of probation separating a defendant from his or her children, and even the prospect of indefinite civil confinement pursuant to SOMTA are not considered sufficiently onerous to require that a defendant be advised of such consequences at the time of his or her plea, we cannot conclude that the permanent loss of a driver license fits into that category. Although the privilege of having a driver license may be of value and importance to many defendants, its loss cannot be considered a devastating deprivation of liberty that can be equated with [*3]deportation, or deemed more severe than SORA registration, denial of contact with one's children, or SOMTA confinement. Thus, even if the subject regulation had existed at the time of the defendant's entering a plea of guilty, the fact that his conviction could contribute to a decision by the DMV to deny reissuance of a driver license at the end of the revocation period does not present the "rare" case in which the defendant's plea cannot be deemed knowing, voluntary and intelligent unless he was advised of that consequence at the time of his plea (id. at 192; see People v Gravino, 14 NY3d at 559).
Accordingly, the Supreme Court should have denied the defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction.
BRATHWAITE NELSON, J.P., RIVERA, ZAYAS and GENOVESI, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court